(C. D. 1983)

UNITED CHINA & GLASS CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided April 22, 1958)

*Stein & Shostak* (*Marjorie M. Shostak* of counsel) for the plaintiff.
*George Cochran Doub*, Assistant Attorney General (*Richard H. Welsh, Mollie Strum*, and *William J. Vitale*, trial attorneys), for the defendant.

Before JOHNSON and DONLON, Judges

JOHNSON, Judge: The merchandise involved in these cases, consolidated at the trial, consists of stoneware articles, imported from Japan, assessed with duty at 50 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930, or at 25 per centum ad valorem and 10 cents per dozen pieces, under said paragraph, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as decorated earthenware, not specially provided for. It is claimed that the articles are properly dutiable at 20 per centum ad valorem and 10 cents per dozen pieces under said paragraph 211, as modified, as decorated earthenware plates.

At the trial, the issue was limited to the articles described on the invoices as 6¼'' B & B (bread-and-butter) plates, appraised at $1.22 per dozen; those described as 7¾'' salad plates, appraised at $1.96 per dozen; and those described as 10'' dinner plates, appraised at $4.77 per dozen. The question before the court is whether these articles are "plates," as claimed by the plaintiff, rather than "other tableware," as classified.

The pertinent provisions of the tariff act and of the trade agreement are as follows:

Tariff Act of 1930:

PAR. 211. Earthenware and crockery ware composed of a nonvitrified absorbent body, including * * * stoneware, * * * and all other articles composed wholly or in chief value of such ware; * * * painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner, and manufactures in chief value of such ware, not specially provided for, 10 cents per dozen pieces and 50 per centum ad valorem.

General Agreement on Tariffs and Trade, T. D. 51802:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 211 | Earthenware and crockery ware composed of a nonvitrified absorbent body not wholly of clay, including * * * stoneware; any of the foregoing which are tableware, kitchenware, or table or kitchen utensils, painted, colored, tinted, stained, enameled, gilded, printed, ornamented, or decorated in any manner:<br>Plates, not over 6⅝ inches in diameter and valued at 75 cents or more per dozen, or over 6⅝ but not over 8⅛ inches in diameter and valued at 90 cents or more per dozen, or<br> *  *  *  *  *  *<br>over 9⅛ inches in diameter and valued at $1.55 or more per dozen;<br> *  *  *  *  *  *  *<br>all the foregoing_____ | 10¢ per doz. pieces and 20% ad val. |
| | Other tableware, kitchenware, and table and kitchen utensils, valued at $2 or more per dozen_____ | 10¢ per doz. pieces and 25% ad val. |

At the trial, samples of the articles were received in evidence as plaintiff's exhibits 1, 2, and 3. Subsequently, plaintiff's exhibit 1–A was substituted for plaintiff's exhibit 1, which was broken in transit.

Plaintiff's exhibit 1–A is a round dish, about 6 inches in diameter and ¾ of an inch deep, decorated in the "Bamboo" pattern. The dish does not have a flat rim, but curves directly from the edge toward the center. The flat center portion is about 3¼ inches in diameter.

Plaintiff's exhibit 2 is a round dish of the same shape and pattern as plaintiff's exhibit 1–A, except that it is 7¼ inches in diameter and ¾ of an inch deep. The flat center portion is 4 inches in diameter.

Plaintiff's exhibit 3 is the same in pattern and similar in shape to the other exhibits. It is 10 inches in diameter and 1¼ inches deep.

It curves more than the other pieces, the flat center portion being 4¾ inches in diameter.

There were also received in evidence a soup bowl and a salad bowl in the same pattern as plaintiff's exhibits 4 and 5. The soup bowl is 6 inches in diameter and 1½ inches deep, having a flat portion 2¼ inches in diameter. The salad bowl is 10½ inches in diameter and 3½ inches deep, having a flat portion 4 inches in diameter.

While all the samples are in the "Bamboo" pattern, the evidence indicates that the articles in the "Iris" pattern, also involved herein, do not differ, except in decoration.

Jerome Levy, who has been associated with the plaintiff company for 33 years and is manager of imports and exports, testified that the firm sells these articles extensively in the United States and that he has sold them to retailers and has received orders from all over the country. He stated that, in the trade, the 6½-inch article is called a bread-and-butter plate, the 7¾-inch article a salad plate, and the 10-inch article a dinner plate. These articles are sold separately and also in a 16-piece set, consisting of 4 dinner plates, 4 cups and saucers, and four 6-inch bowls. According to the witness, this particular shape of dinnerware is comparatively new in the United States, but is a very common one in Japan.

At a subsequent hearing, plaintiff called Mrs. Lee Grater, sales and office manager of Kasuga Sales, Ltd., importer of chinaware, stoneware, and earthenware. In the course of her duties, Mrs. Grater has sold 16-piece stoneware sets, consisting of 4 dinner plates, 4 cups and saucers, and 4 salad bowls. The dinner plate is a 10-inch size, and there are also matching pieces, such as a 7¼-inch salad plate and a 6¼-inch bread-and-butter plate. The witness examined the samples of the involved merchandise and stated that plaintiff's exhibit 1–A was a bread-and-butter plate, plaintiff's exhibit 2 a salad plate, and plaintiff's exhibit 3 a dinner plate. She said she would describe them as coupe-shaped tableware, that is, indented through the entire plate and without a rim, and stated that they were sold as plates.

Before cross-examining this witness, counsel for the defendant produced four articles, which were received in evidence as defendant's exhibits A, B, C, and D. Defendant's exhibit A consists of a round flat dish, 10½ inches in diameter and ⅜ of an inch deep, having a 1-inch flat rim. The flat portion of the dish is 6¼ inches in diameter. Defendant's exhibit B is a round dish, 10 inches in diameter and ½ inch deep. It has no flat rim, but curves directly from the edge toward the center. The flat portion is 6¼ inches in diameter. Defendant's exhibit C is a round dish, 10 inches in diameter and ¾ of an inch deep. It curves from the edge toward the center, having a flat portion 6 inches in diameter. Defendant's exhibit D is a round dish, 10⅜ inches in diameter and ⅜ of an inch deep. It curves from

the rim toward the center, having a flat portion 6¼ inches in diameter.

Mrs. Grater testified that defendant's exhibit A was a rimmed dinner plate and that defendant's exhibits B, C, and D were coupe-shaped dinner plates. She said that her firm does not sell plates like defendant's exhibit C nor any exactly like plaintiff's exhibits 1, 2, and 3, but does sell coupe-shaped stoneware, not quite as deep as plaintiff's exhibits, but a little deeper than defendant's exhibits B, C, and D.

Defendant called as witnesses John J. Starr, manager of product planning of Gladding, McBean & Co., manufacturer of ceramic products, who has been in the industry for 21 years, and Douglas Bothwell, graduate engineer and vice president and sales manager of Vernon Kilns, manufacturer of dinnerware. Both of these witnesses were familiar with plates in unconventional shapes, square, elliptical, and rectangular, or with fluted or scalloped edges. They testified that plaintiff's exhibit 3 was a berry bowl or fruit bowl and not a dinner plate, because the depth would preclude the possibility of its being used for cutting food, the flat area was too small, and it was unstable and impractical for use as a dinner plate. They did not know of any dinner plate sold in the commerce of the United States with a depth as great as that of plaintiff's exhibit 3. The fact that the piece might be offered in a set with salad plates and cups and saucers did not change their opinion.

Mr. Starr testified further that plaintiff's exhibit 1–A was close to a conventional bread-and-butter plate and Mr. Bothwell said it was a cross between a possible sauce dish and a bread-and-butter plate, although the latter is generally flatter. Mr. Starr said that plaintiff's exhibit 2 closely resembled a conventional salad plate, and Mr. Bothwell stated that it was a salad plate or a salad bowl; that in a design of tableware, in which plaintiff's exhibit 4 was the salad bowl, he would consider plaintiff's exhibit 2 to be the salad plate.

Clifton E. Clouse, assistant appraiser and examiner of chinaware and earthenware at Los Angeles, called in rebuttal by the plaintiff, testified that some soup dishes are plates; that they differ in depth from other types of plates; that they are considerably deeper than defendant's exhibit B; and that they ordinarily have a greater depth and lesser diameter than other plates. In his opinion, plaintiff's exhibit 3 is not a soup plate, and is not a plate but a bowl, because it is much too deep and too unstable and because plates generally have flatter bottoms.

In his brief, counsel for the Government conceded, on the basis of the record, that plaintiff's exhibits 1–A and 2 are plates. Consequently, the only remaining issue is whether plaintiff's exhibit 3 is a dinner plate, as claimed by plaintiff.

When paragraph 211 was modified by the trade agreement with the United Kingdom, T. D. 49753, plates, cups, and saucers of specified sizes and values were specially provided for. The digest of trade data

issued in connection with that agreement stated that it was intended to cover all types of plates, cups, and saucers coming within the descriptive language, including flat plates, coupe and deep soup plates, and cake and compartment plates. (Digests of Trade Data with Respect to Products on Which Concessions ·Were Granted by the United States, p. 2–46.) Special classification for plates, cups, and saucers of certain sizes and values was continued in the General Agreement on Tariffs and Trade, T. D. 51802. In that connection, the Summary of Tariff Information, 1948, states that new value brackets were established on plates, cups, and saucers and that the concessions were broadened to include decorated articles (other than plates, cups, and saucers), valued at not less than $2 per dozen separate pieces.

It is evident that all *plates* falling within the size and value specifications were intended to be covered by the trade agreements, but it is equally apparent. that articles which are not plates, cups, or saucers are not included.

A plate has been defined as follows (Webster's New International Dictionary, 1953 edition):

(6. * * * a   A shallow, usually circular, vessel of china, earthenware, metal, or wood, from which food is eaten. The standard crockery plates range from six to eleven inches in diameter. In order of size they are: *bread-and-butter plate*, *dessert plate*, *tea plate*, *breakfast plate*, *dinner plate*, and *service*, or *place plate*.   b   A similarly shaped but often more ornamental dish from which food is served; as, a cake *plate*; a butter *plate*.   [Italics quoted.]

In the instant case, the sample itself is a potent witness. *United States* v. *The Halle Bros. Co.*, 20 C. C. P. A. (Customs) 219, T. D. 45995. It is not a shallow vessel in comparison with the other plates received in evidence, even those in the so-called coupe shape. Only one witness, experienced in the business and who bought and sold it, called it a dinner plate—Jerome Levy, import and export manager of the plaintiff. Mrs. Grater, who also called it a dinner plate, had been in the business only 1 year, and her firm did not sell merchandise exactly like plaintiff's exhibit 3, but coupe-shaped articles which were not as deep. The other witnesses were in agreement that plaintiff's exhibit 3 was not a plate, but a bowl.

In our view, this article is unsuitable for use as a dinner plate, because of its curved shape, depth, instability, and small flat area. It would be difficult to cut meat in it, and, if vegetables and meat were served, they would tend to run together. It might be used for the service of an oriental-style meal, such as chow mein, but it is not the type of article commonly considered to be a dinner plate. It differs significantly from coupe-shaped plates, such as defendant's exhibits B, C, and D, in that it is deeper, curves more, is more unstable, and has a smaller flat area. We conclude that it is not a dinner plate, but a dish or a shallow bowl.

On the record presented, we hold that the articles described as 6¼″

bread-and-butter plates, appraised at $1.22 per dozen, and as 7¾″ salad plates, appraised at $1.96 per dozen, are plates, properly dutiable at 20 per centum ad valorem and 10 cents per dozen pieces under paragraph 211 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, as decorated stoneware plates. To that extent, the protests are sustained. As to all other items and in all other respects, the protests are overruled. Judgment will be rendered accordingly.