(C.D. 2273)

Haruta & Co., Inc. *v.* United States

United States Customs Court, Third Division

(Decided July 5, 1961)

*Siegel, Mandell & Davidson* (*Sidney Mandell* of counsel) for the plaintiff.
*William H. Orrick, Jr.,* Assistant Attorney General (*Sheila N. Ziff,* trial attorney), for the defendant.

Before Johnson, Donlon, and Richardson, Judges

Johnson, Judge: The protest in this case is directed against the collector's assessment of duty on "fruit dishes and coup soups" at 10 cents per dozen pieces and 60 per centum ad valorem under paragraph 212 of the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865, effective September 10, 1955, T.D. 53877, as plates over 6⅝ but not over 7⅞ inches in diameter and valued over $1.35 but not over $3.45 per dozen. It is claimed that the merchandise is properly dutiable under said paragraph at 10 cents per dozen pieces and 45 per centum ad valorem, as articles other than plates, cups, or saucers. Since the fruit dishes were not referred to at the trial or in plaintiff's brief, the protest is deemed abandoned as to such articles.

Paragraph 212 of the Tariff Act of 1930, as modified, provides as follows:

China, porcelain, and other vitrified wares, * * *:
 Tableware, kitchenware, and table and kitchen utensils, not containing
 25 per centum or more of calcined bone:

* * * * * * *

Other than hotel or restaurant ware or utensils:

> Plates, not over 6⅝ inches in diameter and valued over 90 cents but not over $2.55 per dozen, or
>
> over 6⅝ but not over 7⅞ inches in diameter and valued over $1.35 but not over $3.45 per dozen, * * *
>
> articles which are not plates, cups, or saucers and which are valued over $4.50 but not over $11.50 per dozen articles;
>
> all the foregoing_____ 10¢ per doz. separate pieces and 60% ad val.

> Plates of the diameters specified heretofore in this item, cups, saucers, and articles other than plates, cups, and saucers; each of the foregoing which is valued at not more than the minimum value specified heretofore in this item in respect of the like article_____ 10¢ per doz. separate pieces and 45% ad val.

A sample of the imported merchandise was received in evidence at the trial and marked plaintiff's exhibit 1. It consists of a circular chinaware article, 7⅝ inches in diameter, about 1¼ inches deep, and having a base or flat portion 4½ inches in diameter. It has no rim but curves upward and outward from the flat center portion. It sets firmly on the table.

Three witnesses testified for the plaintiff: Junji Miyakana, president of the plaintiff company, who had had 35 years' experience in handling chinaware; Harry H. Lenney, a partner of The Arlen China Co., importer of china and glassware, who had had 27 years' experience in the ceramic and porcelain business; and Samuel D. Goldstein, who has been engaged for 31 years in selling dinnerware to theaters.

Mr. Miyakana testified that he was familiar with various types of plates, such as bread-and-butter plates, tea plates, pie plates, salad plates, luncheon plates, breakfast plates, dinner plates, service plates, and chop plates. He said that plaintiff's exhibit 1 was called a coupe soup and was not a plate. It was more a type of bowl or a dish and was used for the service of soup or cereal. He had also handled an article called a deep plate, which has a rim about 1 inch in width. In his understanding, the term "soup plate" refers only to a deep plate having a rim. It differs from plaintiff's exhibit 1 in that it has a rim and has a slightly smaller capacity.

According to the witness, the term "coupe" is used in the trade to refer to ceramic tableware which is rimless. However, coupe-shaped soups are sold as parts of sets of both rimmed and rimless dinnerware.

Mr. Lenney called the imported merchandise a coupe soup and said it was a rimless soup dish and not a plate or a bowl. In his business, it was always called a coupe soup.

Mr. Goldstein said the merchandise was a coupe soup or a cereal soup and was not a plate but a soup dish.

These witnesses had also handled an article called a deep plate, a deep soup plate, or a rimmed soup plate and were in agreement with Mr. Miyakana that it differed from the imported merchandise chiefly in having a rim.

Plaintiff's three witnesses were in agreement with the following definition of the term "plate" in Webster's New International Dictionary, 1953 edition:

A shallow, usually circular, vessel of china, earthenware, metal, or wood, from which food is eaten. The standard crockery plates range from six to eleven inches in diameter. In order of size they are: *bread-and-butter plate, dessert plate, tea plate, breakfast plate, dinner plate,* and *service,* or *place plate*; b a similarly shaped but often more ornamental dish from which food is served; as, a cake *plate*; a butter *plate.* [Italics quoted.]

Mr. Lenney described an article known as a lug soup as being smaller than plaintiff's exhibit 1, and having ears or extensions protruding for the edges. Mr. Goldstein stated that there was a difference in the trade between plates and dishes; that plates included saucers, and bread-and-butter, salad, chop, and cake plates, and that dishes included fruits, cereals, coupe soups, and cereal soups.

There were received in evidence, as plaintiff's collective exhibit 2, pricelists of The Harker China Co. and The Taylor, Smith & Taylor Co., both of East Liverpool, Ohio. Two of them list "Coup-Soup" and "Lug Soup," and one lists "Soups, Rim" and "Soups, Lug."

Defendant called four witnesses: Sigmund Sigmund, sales and import manager of Crown Ford China Co., importer of fine English earthenware dinnerware; Donald M. Miller, vice president of Maddock & Miller, Inc., dealer in English china and earthenware and domestic hotel ware, who had been in the business for 46 years; Arthur G. Renz, New York manager of the Edwin M. Knowles China Co., manufacturer of dinnerware, earthenware, and vitrified china, who had been in the business since 1910; and William W. Hunter, a china and glass buyer for Plummer, Ltd., who has had experience in the dinnerware line for 57 years.

According to these witnesses, merchandise like plaintiff's exhibit 1 is known, bought, and sold as a coupe soup plate and is differentiated from a rimmed soup plate by virtue of its shape only. They had never heard an article like the imported merchandise called a dish or a bowl or anything other than a soup plate. For instance, Mr. Miller, who had spoken to buyers all over the country, had never heard it called a soup bowl and said that, to his knowledge, no one in the trade had ever called it that.

Mr. Sigmund testified:

I can truthfully say, based on thousands of orders on paper, and requests on telephones for what we call fill-in open stock pieces, replacements of breakage, and so forth, the term, as I know it, and the request has always been for a soup plate. There are, however, instances, and I am guilty of it as well, where I

would just term it as a soup, for the sake of brevity. As a matter of fact, when we invoice this item, the biller just merely puts down "soup."

Q. You mean items like Exhibit 1, when you say this item?—A. I'm sorry; Exhibit 1.

Q. And when you receive open stock orders for this type of item, meaning Plaintiff's Exhibit 1, how is it called?—A. To a great degree, soup plate; or, if not, merely soups.

Mr. Renz stated that when orders or inquiries are received they specify whether a rimmed soup plate or a coupe soup plate is desired.

Mr. Hunter said that when a customer asks for soup plates, he is shown coupe-shaped and rim-shaped items, so that he may make a choice of shape.

An article identified as a rimmed soup plate was received in evidence as defendant's exhibit A. It consists of a circular chinaware article about 8⅜ inches in diameter, about 1 inch deep, having a rim 1½ inches wide, and a center well 3½ inches in diameter. The witnesses called this a soup plate, a deep plate, or a deep soup plate. One of the witnesses said that its capacity was less than that of plaintiff's exhibit 1, but added that there are rimmed soup plates of the same capacity. Mr. Renz said there was a difference in contour between a rimmed soup plate and a coupe soup plate and that the two items represented the larger percentage of all the soup plates sold in this country.

While these witnesses were in general agreement with the dictionary definition quoted above, they said it did not include all types of plates, such as chop plates, divided chop plates, compartment plates, artichoke plates, fish plates, oyster plates, and grill plates.

The witnesses also described certain other articles, such as lug soups, cereal bowls, soup bowls, and cereal soups. Lug soups were said to be the same as coupe soup plates but with two ears protruding. The dimensions of cereal bowls were given as from 3¾ to 6¼ inches in diameter and from 2 to 2¼ inches deep. Soup bowls were described as deeper than plates, having straighter sides, and having a diameter of 8½ to 9 inches and a depth of over 6 inches. Mr. Miller said a soup bowl was not even remotely like plaintiff's exhibit 1. A cereal soup was described as being smaller but having a little more depth than plaintiff's exhibit 1. Such an article was received in evidence as defendant's exhibit C. It is a circular article, 6⅞ inches in diameter, 1⅝ inches deep, and having a base 2½ inches in diameter.

Mr. Miller stated that the manufacturers of plaintiff's exhibit 1 are called plate makers. He testified further:

They make all size plates that are made on a jolly, or jigger. They're put on a form that forms this part of the plate upside down, and then a knife is brought down as the wheel spins, and it forms the basic shape of the back. It's called jollying, or jigging.

Q. And those plates made by the plate makers have always been used as the coup soup plates?—A. A plate maker will always make any size plate, including the soup plates.

Q. Including the coup soup?—A. Well, this is a soup plate, yes.

Q. Plaintiff's Exhibit 1?—A. That's right.

Various pricelists were received in evidence as defendant's exhibit B and collective exhibit D and plaintiff's exhibit 3. The pricelist of Mayer China Co. includes prices for "PLATES—COUPE SOUP" and "PLATES—RIM, DEEP SOUP" and that of Johnson Bros. lists "PLATES 7″ DEEP" and "PLATES 7″ COUPE." Royal Worcester lists "Coupe soup plates 7′″" and "Rim soup plates 7″." Royal Doulton lists "Soup Plate or Cereal" under coupe-shaped merchandise and "Soup Plate" under other dinnerware. Mr. Hunter testified that whether the article was a coupe-shaped soup plate or a rimmed soup plate depended on the pattern of the dinnerware. The pricelist of Homer Laughlin China Co. lists, in a grouping, coupe soups, fruits, oatmeals, cream soup cups, and cream soup stands. Mr. Miller stated that the fact that they were so grouped did not put them all in one class.

The question before the court is whether the imported merchandise is properly classifiable as a "plate" for tariff purposes or not. In *United China & Glass Co.* v. *United States*, 40 Cust. Ct. 208, C.D. 1983, we stated (p. 212):

It is evident that all *plates* falling within the size and value specifications were intended to be covered by the trade agreements, but it is equally apparent that articles which are not plates, cups, or saucers are not included. [Italics quoted.]

We there held that a round dish 10 inches in diameter, 1¼ inches deep, having a flat center portion about 4¾ inches in diameter was not a plate. We noted that it was not a shallow vessel in comparison with the other coupe-shaped plates received in evidence; that only one witness experienced in the trade called it a dinner plate; and that the other witnesses stated it was not a plate but a bowl. The court concluded (p. 212):

In our view, this article is unsuitable for use as a dinner plate, because of its curved shape, depth, instability, and small flat area. It would be difficult to cut meat in it, and, if vegetables and meat were served, they would tend to run together. It might be used for the service of an oriental-style meal, such as chow mein, but it is not the type of article commonly considered to be a dinner plate. It differs significantly from coupe-shaped plates, such as defendant's exhibits B, C, and D, in that it is deeper, curves more, is more unstable, and has a smaller flat area. We conclude that it is not a dinner plate, but a dish or a shallow bowl.

In the instant case, the article is suitable for the service of soup and is so used. Only one witness called it a type of bowl. Plaintiff's other witnesses called it a dish and defendant's witnesses called it a plate. Since "dish" is a general term covering a vessel, platter, plate, or bowl,

used for the service of food (Webster's New International Dictionary), the question to be decided is whether the imported item is more particularly described as a "plate," within the meaning of the tariff act, as modified by the trade agreements.

While the dictionary definition, *supra*, describes a plate as a shallow vessel, the same lexicon defines a soup plate as—

A deep plate, often with an extended edge, for serving soup * * *.

In a glossary at the back of "Ceramics for the Table" by Sally Taylor, New York, 1950, the following definitions appear (pp. 146–147):

COUPE SHAPE: Plate shape, flat across the diameter of the plate, except for the rim, which rolls up slightly. An ancient Chinese plate shape, adapted for modern dinnerware. Other types of plates have a center well and a slanting shoulder at the rim.

COUPE SOUP: A rimless soup plate.

All of the witnesses herein were in agreement that there was an article called a deep plate; that rimmed soup plates were deep plates; and that the chief difference between a rimmed soup plate and a coupe soup was the presence or absence of a rim. While plaintiff's witnesses and some of the pricelists used the term "coupe soup," defendant's witnesses and other pricelists referred to such articles as "coupe soup *plates*." As stated by Mr. Sigmund, the term "coupe soup" is used for brevity for the term "coupe soup plate."

From an examination of the exhibits and from common knowledge of the usual shapes of ceramic tableware, it is evident that the chief difference between the ordinary rimmed plate and a deep plate is that the center well of the latter is deep enough to hold a liquid. An ordinary coupe-shaped plate does not have a rim nor a center well, but is flat across and curves up slightly at the edge. The vessel for soup in coupe-shaped ware is an item like plaintiff's exhibit 1, which does not have a rim, but is flat and curves upward 1¼ inches at the edge, in order that it may contain a liquid. It corresponds to the article in rim-shaped dinnerware concededly known as a deep plate.

Different rates of duty for articles described as plates, cups, or saucers first appeared in a modification of the earthenware paragraph, paragraph 211, in the trade agreement with the United Kingdom, T.D. 49753. The intention of the parties to that agreement was set forth in the "Digests of Trade Data with Respect to Products On which Concessions Were Granted By the United States," volume III, schedule 2, pages 46–47, as follows:

The reduced rate of duty provided in the trade agreement is limited to decorated or colored earthenware and stoneware plates, cups, and saucers (for hotel and restaurant as well as for household use) valued at not less than specified amounts; the sizes of the plates further limit the application of the reduced rate.

Except for the value bracket limitations, no restriction on the types of decorated and colored earthenware plates, cups, and saucers entitled to the reduction in duty was written into the agreement, since it was intended to cover all types of plates, cups, and saucers coming within the descriptive language. A complete list of the different articles would not be practicable, but the more important articles include flat plates, *coupe and deep soup plates*, cake and compartment plates, tea, coffee, cream soup, bouillon and other cups and saucers, as well as saucers not used in conjunction with cups, such as fruit and oatmeal saucers. [Italics supplied.]

It is evident that the trade agreement negotiators were aware of the existence of merchandise known as "coupe and deep soup plates" and intended to include them within the classification for plates. There is nothing in any of the later trade agreements, modifying either paragraph 211 or paragraph 212, to indicate that such intention has changed.

While the plaintiff herein refers to its merchandise as coupe soups, there is nothing to show that it is different, except in material, from the articles referred to in the Digest of Trade Data as coupe soup *plates*. In fact, the latter term is the one used by defendant's witnesses to refer to plaintiff's merchandise.

On the record presented, we are of opinion that the weight of the evidence establishes that the imported merchandise is known, bought, and sold as a coupe soup plate and that it is of the type intended by the trade agreement negotiators to be included within the meaning of the term "plate."

We hold, therefore, that the merchandise was properly assessed by the collector at 10 cents per dozen pieces and 60 per centum ad valorem under paragraph 212, as modified, as plates over 6⅝ but not over 7⅞ inches in diameter and valued over $1.35 but not over $3.45 per dozen. The protest is overruled and judgment will be rendered for the defendant.