(C.D. 2895)

New York Merchandise Co., Inc. *v.* United States

United States Customs Court, First Division

(Decided February 20, 1967)

*Stein and Shostak* (*S. Richard Shostak* of counsel) for the plaintiff.
*Barefoot Sanders*, Assistant Attorney General (*Morris Braverman*, trial attorney), for the defendant.

Before OLIVER, WATSON, and RAO, Judges

RAO, Chief Judge: Merchandise described as a plastic salad set, consisting of a 10-inch bowl, four 6-inch bowls, and a fork and spoon, were imported from Japan and entered at the port of Portland, Oreg., on August 13, 1964. The fork and spoon were assessed with duty at 17 per centum ad valorem under item 772.15 of the Tariff Schedules of the United States and the bowls at 21 cents per pound and 17 per centum ad valorem under item 772.06. The protest claimed that the bowls were dutiable at only 17 per centum ad valorem under item 772.15, but at the trial, the claim was limited to the four 6-inch bowls.

The pertinent provisions of the Tariff Schedules of the United States are as follows:

| Item | Articles | Rates of Duty |
|---|---|---|
| | Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics: | |
| * | * * * * * | * |
| 772.06 | Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters_____ | 21¢ per lb. + 17% ad val. |
| * | * * * * | * |
| 772.15 | Other_____ | 17% ad val. |

Samples of the salad set were received in evidence at the trial as plaintiff's collective exhibits 1–A, 1–B, and 1–C. Exhibit 1–B is a brown bowl in a simulated wood grain finish, 10 inches in diameter at the top and about 3 inches deep. Exhibit 1–A consists of four matching brown bowls, each about 6 inches in diameter at the top and about 2 inches deep. Exhibit 1–C consists of a matching fork and spoon.

The sole witness at the trial was Jack E. Lewis, a buyer employed by New York Merchandise Co., Inc., the plaintiff herein. He had been with the company 20 years and had bought and sold housewares, hardware, and stationery. He had personally bought the merchandise involved herein and sold it only as a seven piece salad set. He did not sell replacement parts. A 6-inch wooden salad bowl was introduced into evidence as plaintiff's exhibit 2, and the witness said both the plastic and the wooden bowls were fragile and could not be washed in a dishwasher. The wooden one would deteriorate if left to dry while wet and would crack and splinter. Both had been treated with lacquer. The witness stated he had handled various lacquerware items in the food line, including bowls, serving pieces, and trays, and that he never ran across one which was supposed to be used with hot liquids. He had handled serving trays and 10-inch bowls in different shapes. The former are used for serving beverages, etc., and the latter as fruit bowls, or for serving, or as decorative pieces. The 10-inch bowl here is not sold separately from the set and is used for serving salads. The salad is tossed in the bowl with the fork and spoon and is then put into the smaller bowls. He did not consider the 6-inch bowl a serving bowl because it was something one would eat out of directly. It was not designed for anything hot. In his opinion, it was not a soup bowl, a cereal bowl, or a serving dish.

The witness stated that in the trade serving dishes are mostly called platters. They are used to bring food to the table and each one helps himself. He said he sold the bowls here as salad bowls but he could not restrict their use. He "imagined" the 6-inch bowl could be used for serving peanuts, candy, or anything else. However, he bought the merchandise specifically as a salad set.

Mr. Lewis testified also that he was familiar with a type of plastic merchandise known as Melmac and that it was a special type of plastic which can be used in a dishwasher and will stand extreme heat. The line comes in all types of pieces and is not of a lacquered character. It is manufactured in the United States.

Plaintiff claims that the 6-inch bowls are not soup bowls, cereal bowls, sugar bowls, or serving dishes and are not covered by any of the designations in item 772.06, *supra*. Defendant claims that bowls may be serving dishes and that the plaintiff has not produced competent proof that the bowls in issue are not dishes chiefly used for serving food.

Under the Tariff Act of 1930 and its modification, it has been held that bowls are not plates; that cups and mugs are different; that eggcups are not cups, and that coupe soup plates are plates. *United China & Glass Co.* v. *United States*, 40 Cust. Ct. 208, C.D. 1983; *Ross Products, Inc.* v. *United States*, 40 Cust. Ct. 158, C.D. 1976; *Imports,*

*Inc.* v. *United States*, 55 Cust. Ct. 506, Abstract 69681; *Ross Products, Inc.* v. *United States*, 46 Cust. Ct. 8, C.D. 2226; *Haruta & Co., Inc.* v. *United States*, 47 Cust. Ct. 21, C.D. 2273. Although the term "dish" does not appear in the Tariff Act of 1930 or its modifications, in *Thorens, Inc.* v. *United States*, 19 Cust. Ct. 67, C.D. 1069, appeal dismissed 35 CCPA 158, it was held that an article described as an earthenware dish with a portion for holding food and a hollow base for the attachment of a musical unit was a plate for the service of food to a child.

These cases are not very helpful in view of the different language in the Tariff Schedules of the United States. Since the record indicates that the bowls before us are not soup bowls, cereal bowls, or sugar bowls, and the Government does not so claim, the only question is whether they are serving dishes, as that term is used in the tariff schedules.

Webster's New International Dictionary (1958 edition) defines "dish" as—

A vessel, as a platter, a plate, a bowl, used for serving up food at the table.

The Tariff Classification Study of November 15, 1960, schedule 7, page 451, states:

Item 772.03–772.15 provide for articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients, and household articles not specially provided for. The imports in the wide variety of products covered by these items has not been large. The rate of duty reflected for each class of goods is believed to be consistent with the general level of rates now applicable.

References to the Tariff Act of 1930 next to item 772.06 of the proposed schedules, on page 431, list paragraph 31(a)(2) (articles of cellulose acetate), paragraph 1539(b) (manufactures of products of which synthetic resin is the chief binding agent), and paragraph 1559 (similitude).

While this is unhelpful in establishing what was meant by the term "serving dishes" in item 772.06, we believe there is material relating to ceramic articles chiefly used for serving food covered by schedule 5, part 2, subpart C, which is significant. As originally proposed this subpart had a headnote 2(i) which provided:

(i) the term "dinnerware and teaware" embraces the following household articles for serving food and beverages: Plates, cups, saucers, platters, open or covered vegetable dishes, salad bowls, gravy boats, tureens, sugar bowls, cream pitchers, beverage pots, butter dishes, and pickle dishes; * * * [Tariff Classification Study, schedule 5, p. 190].

After the hearings, the headnotes were changed. Headnote 2(b) of subpart C includes in an enumeration of articles in sets:

12 plates of the size nearest to 10.5 inches in maximum dimension, * * *,
12 plates of the size nearest to 6 inches in maximum dimension, * * *,
12 tea cups and their saucers,
12 soups of the size nearest to 7 inches in maximum dimension, * * *,
12 fruits of the size nearest to 5 inches in maximum dimension, * * *,
1 platter or chop dish of the size nearest to 15 inches in maximum dimension, * * *,
1 open vegetable dish or bowl of the size nearest to 10 inches in maximum dimension, * * *,
1 sugar of largest capacity, * * *,
1 creamer of largest capacity, * * *.

If either soups or fruits are not sold or offered for sale, 12 cereals of the size nearest to 6 inches in maximum dimensions, sold or offered for sale, shall be substituted therefor.

In statements submitted by trade witnesses, the term "dish" is used most frequently for articles 10 inches or over in diameter. Tariff Classification Study, schedule 5, pages 341–342, 349, 380–381, 403–405. In describing dinnerware sets, 12 pieces each are listed for the plates, cups, and saucers, and 1 piece for articles, such as platters, bakers, and casseroles. Ibid., pages 339–342, 380–381, 399, 403–405. Some sets are listed as having salad plates and "1 salad," as well as 1 casserole, sauceboat, platter, etc. Ibid., page 350.

From this we conclude that in the trade and in the tariff schedules a distinction has been made between plates, cups, and saucers, or dishes from which an individual eats, and larger dishes, bowls, or platters, which are used to bring food to the table and serve portions to the individual.

In a recent case, *Laurence Myers Scaffolding Co.* v. *United States*, 57 Cust. Ct. 333, C.D. 2809, this court has had occasion to state in construing another item of the tariff schedules:

One has to peruse but briefly the provisions of the Tariff Schedules of the United States to be impressed with the particularity with which merchandise is provided for in detailed itemizations. In view of this particularization, it naturally follows that the language used was selected with the view to pinpoint the classification of merchandise rather than to encompass imported articles within the broader language which previously controlled the tariff classification of merchandise. * * *

Following this line of thought, it is clear that the term "serving dishes" means just that, dishes from which individual portions of

food are taken or served. This, we believe, is also the common understanding of the term.

Turning to the merchandise before the court, it is evident that the 10-inch bowl is a serving dish from which portions of salad are taken and placed in the smaller bowls for individual use. True, the smaller bowls could be used for the service of candy or nuts, but it is obvious that such use would be fugitive. The articles were sold only in sets and no housewife would be likely to purchase a set if she wanted only a dish or bowl for the service of candy or nuts.

We hold, therefore, that the 6-inch bowls involved herein are properly dutiable at 17 per centum ad valorem under item 772.15 of the Tariff Schedules of the United States, as plastic articles chiefly used for preparing, serving, or storing food, other than those enumerated in item 772.06. To that extent the protest is sustained. As to all other merchandise, it is overruled. Judgment will be rendered accordingly.