**ROBAIRE IMPORT COMPANY**

**v.**

**UNITED STATES.**

**C.D. 3307; Protest No. 63/10436–71344.**

United States Customs Court
First Division.
Feb. 26, 1968.

Glad & Tuttle, Los Angeles, Cal. (Robert Glenn White, Los Angeles, Cal., of counsel), for plaintiff.

Edwin L. Weisl, Jr., Asst. Atty. Gen. (Mollie Strum, New York City, trial attorney), for defendant.

Before WATSON and MALETZ, Judges.

WATSON, Judge:

The merchandise in the case at bar, described on the invoice as "Grapes," was classified under paragraph 1518(a) of

the Tariff Act of 1930, as modified by the Protocol of Terms of Accession by Japan to the General Agreement on Tariffs and Trade, T.D. 53865 and T.D. 53877 at the rate of 35 per centum ad valorem as artificial or ornamental fruits. Plaintiff claims the merchandise properly classifiable under paragraph 233 of said act, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 21 per centum ad valorem as articles, wholly or partly manufactured, of alabaster. It was stipulated between the parties that the articles in issue are manufactures in chief value of alabaster (R.2).

The alabaster articles in question are circular balls assembled in clusters on a short piece of stick, and come in various hues and colors.

The pertinent provisions of the statutes herein involved are as follows:

Paragraph 1518(a) of the Tariff Act of 1930, as modified by T.D. 53865 and T.D. 53877:

Artificial or ornamental fruits, vegetables, grasses, grains, leaves, flowers, stems, or parts thereof:

\* \* \* \* \* \*

Composed wholly or in chief value of other materials (except feathers) and not specially provided for . . . . . . .
35% ad val.

Paragraph 233 of the Tariff Act of 1930, as modified by T.D. 54108:

Alabaster and jet, wholly or partly manufactured into monuments, benches, vases, and other articles, and articles of which these substances or either of them is the component material of chief value, not specially provided for

. . . . . . . .
21% ad val.

The record consists of the testimony of Mr. Robert F. Meurer, owner of Ro-baire Import Company, called by the plaintiff and the introduction in evidence of three exhibits. Plaintiff's exhibit 1 is a sample of "medium size" representative of the item described as coral "grapes" on the entry covered by the protest at bar (R.6–7). The items on the entry papers are approximately half the size of the sample in evidence (R.10). Plaintiff's exhibit 2 is a sample of the merchandise representing translucent "grapes." When imported, it had a stem, such as that in plaintiff's exhibit 1 (R.12). Plaintiff's exhibit 3 is a piece of natural, unpainted alabaster, illustrative only of the "finish of natural translucent alabaster", but not of the same "shape or configuration" of the imported items (R.14–15).

The question as to whether an article is properly classifiable as an artificial fruit, stem, leaf, etc., has been passed upon by this and our Appellate Court on many occasions. In Cochran Co. et al. v. United States, 10 Ct.Cust.App. 62, T.D. 38336, item No. 1008, therein involved, consisted of a cluster made of black straw wound into the form of berries or grapes and set on a black-straw leaf attached to a stem made of black straw and metal. Item No. 1298, in question, consisted of a spray of black leaves bearing a black rose. The spray and rose were composed of black straw sewed with black thread to a stiff woven fabric which served the purpose of a foundation or framework. In holding that these items were properly dutiable as "artificial and ornamental fruits, grains, leaves, flowers and stems", the court, page 64, stated:

It may be that neither exhibit truly represents any natural flower, fruit, leaf, or stem. Nevertheless, both come within the tariff designation of "artificial and ornamental fruits, grains, leaves, flowers, and stems," inasmuch as they are articles which simulate the natural fruit, flower, leaf, or stem in its physical characteristics and appearance sufficiently to cause them in common understanding to be regarded as leaves, stems, flowers, or fruits pro-

duced not by nature, but by the hand of man, and which at the same time are appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted.

Counsel for both parties to this controversy direct our attention to the holding of the court in the leading case of Marshall Field & Co. v. United States, 45 CCPA 72, C.A.D. 676. The merchandise therein involved consisted of certain merchandise invoiced as "Iron Works, Metal fruits w/leaves", and "Iron pictures of 4 season flowers rusty finish with dull black wooden frame". In its decision, the court therein set forth certain factors to be considered in the classification of artificial flowers or fruits, stating at page 80, as follows:

* * * A close look at the *Cochran* case opinion will show that all the court was doing was to say whether or not the straw objects before it were or were not artificial fruits, leaves, flowers and stems, though admittedly they looked like no real plant to the extent of deceiving anyone into thinking they were real. The court decided the issues, as it has in every other case we have reviewed *on the basis of its own judgment* as to whether the merchandise before it was or was not *in common understanding* an artificial fruit, leaf or flower. Thus on a case by case basis, the court construes and sets the limits of the statutory language by a process of inclusion and exclusion. It is by this process that we determine "common meaning," which it is our province to do and as to which we are bound by no evidence.

* * * [Emphasis quoted.]

After citing a number of cases on the question of "common meaning", the court, page 81, stated:

It will be seen from the cases above mentioned that many different factors were taken into consideration in determining whether the articles in each case were artificial fruits or flowers. These factors were not limited to the two questions of closeness of simulation and suitability to the ornamental uses of real flowers referred to in the *Cochran* opinion but included others such as size, primary function, other recognized names, uses and applicable tariff act provisions, and ordinary common sense. The situation must be viewed as a whole.

In holding the involved merchandise not classifiable as artificial fruits or flowers, the court in the *Marshall Field* case, supra, at page 81, stated:

We hold, on the ample evidence before us, that the metal fruit with leaves exemplified by Exhibit 1 is not in the category of "artificial fruits," as classified, because in our judgment it is properly described as a wrought iron wall decoration using a fruit and leaf motif. We believe that the common understanding of the term "artificial fruit" does not encompass such iron objects, particularly when their overall color is that of oxidized iron so as to give the observer the distinct and immediate impression that it is a work of wrought iron, to be used where it is desired to add a touch of wrought iron to interior décor, not where one would normally use real fruit or close imitations thereof in form and color.

The "iron pictures" exemplified by Exhibit 2 we hold are not in the category of "artificial flowers" wherein they were classified. They are a species of three-dimensional monochrome pictorial compositions mounted in frames and are obviously to be used as framed pictures are used, hanging on a wall as testified. This is not the use to which real flowers are normally put, nor the close imitations thereof which might be mistaken therefor.

As appears from the rule enunciated in the *Marshall Field* case, supra, the factors to be taken into consideration in determining whether certain merchandise is to be classified under the relevant provision for artificial flowers, fruits, etc., are not limited to "closeness of simulation and suitability to the ornamental

uses of real flowers" but also "included others such as *size*, primary function, other recognized names, uses and applicable tariff act provisions, and *ordinary common sense*". [Emphasis supplied.] As stated by the court in that case, "The situation must be viewed as a whole."

Samples are potent witnesses. In our opinion, the articles in the case at bar do not look enough like a fruit to be regarded in common understanding as an artificial fruit. Even allowing for the fact that the small size ball included herein on the entry is approximately half the size of plaintiff's exhibit 1, it seems doubtful that any grapes are even as large as the small size. The alabaster articles here in question not only do not suggest fruit by their color and texture, but also lack simulation to the natural fruit in "common understanding". While plaintiff's witness stated that plaintiff's exhibit 1 simulates "grapes", we do not find this statement all controlling in the determination of the proper classification of the merchandise. He stated in subsequent testimony that he "could never conceive the idea" of these items being classified as artificial fruit. Likewise, in our opinion, the fact that plaintiff ordered the merchandise as "grapes", is not conclusive. Plaintiff's witness explained that the merchandise was so ordered because "That is the term set by the manufacturer" (R.24). Designating articles as "grapes" does not make them artificial fruit unless embraced as such within the contemplation of the tariff act. Plaintiff's witness further testified that the basic use of the involved articles is as "an item to bring color or decor to any home" (R.16) and that they are primarily used by decorators for such purposes. The fact that the involved items, more in the shape of a ball, are assembled into a cluster, is, in our opinion, merely incidental to their general use and primary function, that is, for color-accenting purposes as in setting off or contrasting with carpets and drapes (R.17), as testified to herein. As indicated by their exaggerated size and unrelated texture and color to the real articles, the articles at bar are not, in our opinion, within the "common understanding" of artificial fruit. Further, as stated in the case of Coro, Inc. v. United States, 39 CCPA 154, C.A.D. 478, "It would tax the imagination" to picture such articles as being artificial fruits in accordance with common understanding. Without a "suggestion" as to what the involved items might represent, we do not believe a viewer would consider the items to be artificial fruit. In addition, the involved items are not, in our opinion, "appropriate and suitable to be used for those purposes of ornamentation to which the natural products may be temporarily devoted" (*Cochran* case, supra).

On the basis of the record here presented, plaintiff, in our opinion, has overcome the presumption of correctness attaching to the collector's classification of the merchandise as artificial or ornamental fruits. As disclosed by the record, the articles at bar have been stipulated to be in chief value of alabaster. We, accordingly, hold the involved merchandise properly classifiable under paragraph 233 of the Tariff Act of 1930, as modified, at the rate of 21 per centum ad valorem, as articles, wholly or partly manufactured, of alabaster, as claimed.

Judgment will issue accordingly.