**DAVAR PRODUCTS, INC.**
v.
**UNITED STATES.**
**C. D. 3880; Protests Nos. 66/60189–1920–66, etc.**

United States Customs Court,
First Division.
Sept. 8, 1969.

Siegel, Mandell & Davidson, New York City (Allan H. Kamnitz, New York City, of counsel) for plaintiff.

William D. Ruckelshaus, Asst. Atty. Gen. (Sheila N. Ziff and Andrew P. Vance, New York City, trial attys.), for defendant.

Before WATSON, MALETZ, and RE, Judges.

RE, Judge:

The merchandise in these four protests, consolidated for trial, consists of lacquered plastic articles described as a snack bowl, a snack set, and a two-tiered tidbit tray. The snack bowl (plaintiff's exhibit 1) is an eight-inch lacquered utility bowl imported in four different shapes. The snack set (plaintiff's exhibit 2) consists of three flat-bottomed bowls in different sizes and one cover for the largest bowl, so designed that when not in use, they either can be stacked one upon the other or placed one inside the other. The largest of the snack set bowls contains the legend "snacks", the smallest contains the legend "nuts" and the third "pretzels". The two-tiered tidbit tray (plaintiff's exhibit 3) is approximately 12 inches high, and consists of two trays with a hole in the center of each to receive the rod which unites them.

The articles were classified by the collector of customs under the provision of item 772.06 of the Tariff Schedules of the United States as "serving dishes". They were therefore assessed with duty at the rate of 21 cents per pound plus 17 per centum ad valorem. Plaintiff claims that none of the articles is a "serving" dish. It contends that they are properly classifiable under item 772.15 of the tariff schedules as "other" plastic articles, and are dutiable at the rate of 17 per centum ad valorem. It is also maintained, in the alternative, that the tiered tidbit tray in protest 66/53890 is a "tray" properly dutiable under item 772.09 at the rate of 17 per centum ad valorem.

The following are the pertinent or competing provisions of the Tariff Schedules of the United States:

Subpart C, Part 12, Schedule 7

Articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients; and household articles not specially provided for; all the foregoing of rubber or plastics:

\* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| 772.06 | Plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters | 21¢ per lb. + 17% ad val. |
| 772.09 | Trays | 17% ad val. |
| 772.15 | Others | 17% ad val. |

As in all such cases the question presented pertains to the proper tariff classification of the imported merchandise. The plaintiff asserts that the samples, together with the testimony of its two witnesses, clearly establish that the articles, by design and use, are neither intended nor are they used as "serving dishes". It is urged that the very nature of the articles establishes that they are "casual serving" pieces for the holding and serving of tidbits, and are not of the class of articles used for serving food at meals. In plaintiff's view they are candy dishes, tidbit dishes, tiered servers and potato chip dishes, and are used before or after a meal, such as a candy or bonbon dish.

Plaintiff's two witnesses consisted of Mr. David Breslow, the president of the plaintiff corporation, and Mr. Sanford H. Hartman of the U. S. Asiatic

Company and a partner of the Shafford Company, who has designed, bought and sold articles similar to the merchandise at bar. The defendant did not call any witnesses but relies upon the presumption of correctness which attaches to the classification of the collector of customs. McKesson & Robbins, Inc. v. United States, 27 CCPA 157, C.A.D. 77 (1939); Kaysing v. United States, 49 CCPA 69, C.A.D. 798 (1962). The defendant submits that the plaintiff has not only failed to overcome the presumption of correctness, but that it has also failed to establish the correctness of its own claims. E. Seagram & Sons, Inc. v. United States, 30 CCPA 150, C.A.D. 227 (1943); Nylos Trading Company v. United States, 37 CCPA 71, C.A.D. 422 (1949).

Mr. Breslow, who has been president of plaintiff corporation since 1957, was prior thereto sales manager for Stetson China Company, a manufacturer of dinnerware. He designed the articles in question and has been selling them for about five years. Using the words "dinnerware" and "tableware" interchangeably, Mr. Breslow testified that as an employee of the Stetson China Company he sold dinnerware in the eastern part of the United States. In that capacity he sold "dinnerware sets consisting of plates, cups and saucers, soup bowls, sugar and creamers." Although he presently sells the articles that are the subject of the imported merchandise they are not sold as "tableware". They are sold as "casual serving pieces, or for casual serving pieces around the home." Mr. Breslow has seen the articles used on patios, swimming pools and in dens at bars "[f]or casual serving of pretzels, nuts, any tidbits that were used around the home." From his experience and observations they were never used during the service of a meal. In cross-examination Mr. Breslow testified that articles such as illustrative exhibit 1 could not be used for the service of potato salad because it "may absorb the odors." He also amplified his testimony, given in direct examination, that the articles "cannot be used in a washing ma-

chine." When washed with hot water, either in a sink or in a washing machine, "[t]he color fades off, and the material itself is too soft, and it starts to warp and twist."

Mr. Hartman testified that he is familiar with the imported merchandise since he has designed, bought and sold similar merchandise for approximately seven years. Based upon his knowledge and experience in having sold tableware for about 20 years, Mr. Hartman did not consider the articles in question to be tableware. The items, in his opinion, "are definitely not tableware" for as he explained, "they are not used on the table in the service of a meal such as tableware that we have been selling for that particular purpose."

An examination of items 772.03 through 772.15 of the Tariff Schedules of the United States reveals that, although the various articles therein specified are all "articles chiefly used for preparing, serving, or storing food or beverages, or food or beverage ingredients", they are nevertheless of distinct classes or categories. For example, item 772.03 pertains to "salt, pepper, mustard and ketchup dispensers". Clearly, these items perform the specific function of dispensing spices and condiments. Item 772.09 pertains to "trays", which perform the particular function of holding, carrying or exhibiting articles. See Webster's Third New International Dictionary of the English Language Unabridged (1968). Admittedly, no article is to be relegated to the category of "other" in item 772.15 if it is properly specifically classifiable elsewhere. Henry Clay & Bock & Co., Ltd. v. United States, 42 Cust.Ct. 160, 169, C.D. 2081 (1959). Consequently, the question presented pertains to the nature and class of articles encompassed by item 772.06. The articles named therein include "plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters".

The enumerated articles are usually associated in sets, such as dinner, tea

or breakfast sets, and traditionally refer to the kind of tableware used during the service of a meal. The words "serving dishes", which appear between "gravy boats" and "platters", must refer to a specific type of article of the same class or kind as the other enumerated articles. See discussion of the *ejusdem generis* rule of construction in Nomura (America) Corp. v. United States, 62 Cust. Ct., C.D. 3820 (1969), appeal pending. It would be unwarranted to attribute to the draftsmen of item 772.06 an intent to give the words "serving dishes", a broad and all-inclusive meaning. Were the words to be construed to embrace all dishes used for serving, excepting dispensers provided for in item 772.03 and trays provided for in item 772.09, there would have been no necessity in item 772.06 specifically to enumerate plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats and platters in addition to serving dishes. Clearly, therefore, "serving dishes" must have been intended to refer to a specific kind of article for the serving of food.

That the words "serving dishes" have a specific meaning as words of art may be gleaned from the decisions of this court which deal not only with plastic articles of tableware, but also the ceramic or pottery articles of classic origin which for centuries have been used as tableware or dinnerware. Copeland & Thompson v. United States, 12 Cust.Ct. 85, C.D. 833 (1944); Johnson Bros. v. United States, 15 Cust.Ct. 113, C.D. 955 (1945); M. & D. Miller, Inc. v. United States, 28 Cust.Ct. 195, C.D. 1410 (1952), aff'd., 41 CCPA 226, C.A.D. 556 (1954). In New York Merchandise Co., Inc. v. United States, 58 Cust.Ct. 93, C.D. 2895 (1967), the plaintiff maintained that six-inch plastic bowls were not soup bowls, cereal bowls, sugar bowls or serving dishes and were therefore not covered by any of the designations in item 772.06. Although the defendant claimed that they were "serving dishes", the court sustained the protest and held that they were properly dutiable under item 772.15 as "plastic articles chiefly used for preparing, serving, or storing food, other than those enumerated in item 772.06." *Id.* at 98. Since the record in the *New York Merchandise Co.* case indicated that the bowls were not soup bowls, cereal bowls or sugar bowls, and the defendant did not so claim the question was squarely presented whether they were "serving dishes" as those words are used in the tariff schedules. After referring to the tariff history of ceramic articles chiefly used for serving food covered by schedule 5, part 2, subpart C, the court concluded that:

> " * * * [I]n the trade and in the tariff schedules a distinction has been made between plates, cups, and saucers, or dishes from which an individual eats, and larger dishes, bowls or platters, which are used to bring food to the table and serve portions to the individual." *Id.* at 97.

After a quotation from Laurence Myers Scaffolding Co. v. United States, 57 Cust. Ct. 333, C.D. 2809, 259 F.Supp. 874 (1966), to the effect that the tariff schedules were drafted with particularity and specificity, the court held that "it is clear that the term 'serving dishes' means just that, dishes from which individual portions of food are taken or served. This we believe, is also the common understanding of the term." *Id.* at 97–98. The six-inch plastic bowls were therefore held dutiable under item 772.15 pertaining to "other", and not under item 772.06 which includes "serving dishes".

Another decision of this court, helpful in determining the meaning of "serving dishes" as used in the tariff schedules, is Maui Varieties, Ltd., et al. v. United States, 58 Cust.Ct. 278, C.D. 2961 (1967), aff'd, 56 CCPA, C.A.D. 950 (1968). The merchandise in the *Maui Varieties, Ltd.* case consisted of lacquered plastic articles described on the invoices as rice containers or tubs, candy bowls or boxes, hors d'oeuvre trays, and sushi or "sushioke" trays. Although they were assessed with duty as "serving dishes" it was claimed that none was a serving dish. Although the protests in

*Maui Varieties, Ltd.* were overruled, there can be no doubt that the case stands for the proposition that the words "serving dishes" as used in item 772.06 do not include all articles used to serve food at any time or place, buy only those chiefly used for serving food at meals. The protests were overruled because the evidence presented therein was insufficient to overcome the presumption of correctness attaching to the collector's classification and to establish the correctness of the claimed classification. That the protests were overruled as to all of the articles for evidentiary insufficiency is clearly set forth in the court's decision. After citing with approval the holding of the *New York Merchandise Co.* case that "serving dishes" means "dishes from which individual portions of food are taken or served", the court stated:

> " * * * The evidence in the instant case, as well as the presumption attaching to the collector's classification, establishes that all of the articles before us are so used, either at meals or after or between meals." Maui Varieties, Ltd., et al. v. United States, 58 Cust.Ct. at 283.

As to articles described as "trays" and represented by exhibits 6 and 8 the court said:

> " * * * The evidence presented is not sufficient to establish that the articles represented by exhibits 6 and 8 are not chiefly used in the United States as serving dishes during the service of a meal." *Id.* at 286.

Referring to the so-called candy boxes or bowls exemplified by exhibits 2, 7, 9, 10, 11 and 12, the court stated:

> " * * * While most of the witnesses testified that they had not seen these articles used in the service of a meal, although they had seen them used to serve candy, cookies or potato chips at other times, their testimony is not sufficient to establish what the chief use of the articles was throughout the United States at the time of importation or to overcome the presumption

arising from the collector's classification that they were chiefly used as serving dishes. The experience of the witnesses was confined to Hawaii and California, but the merchandise was sold to tourists as well as to the local trade and so presumably is used throughout the country. Such uses may well be different. The articles themselves do not indicate that use in one part of the country would necessarily be the same as that in another. Since chief use is a question of actual fact, in the circumstances here present, evidence as to use must cover more than one or two states in order to sustain plaintiffs' claim." *Id.* at 286–287.

The following statements of the court in *Maui Varieties, Ltd.* pertaining to the rice containers shed considerable light on the meaning of "serving dishes":

> "From the evidence presented, it is clear that the articles known as rice containers, rice pots, rice tubs, or "Hanki," illustrated by plaintiffs' exhibits 1, 4 and 5 are 'serving dishes.' They are used to contain cooked rice from which individual portions are served during the course of a meal. The fact that the container is customarily stood on the floor when a meal is served at low tables, Japanese style, or placed on a side table when the meal is served at a high table is insignificant. Ordinary serving dishes, bowls, or platters in conventional dinnerware may be stood on sideboards or serving tables during meals, where they are available or where the dining table is crowded.

> "The use * * * for flower arrangements, is obviously an incidental or fugitive use, since the article, with its cover and spoon, is obviously designed for serving food, and the weight of the evidence establishes that it is so used.

> "The evidence as to the so-called sushioke or sushi tray similarly establishes that it is used to contain food during the service of a meal, and

there is nothing to show that that is not the chief use, although it may also be used for other purposes." *Id.* at 284–285.

It would seem clear, therefore, that the words "serving dishes" found in item 772.06 apply only to those articles chiefly used for serving food at meals. The plaintiff herein has stressed this limitation, and cites the case of United States v. Butler Bros., 33 CCPA 22, C.A.D. 310 (1945). The *Butler Bros.* case, which was decided under the Tariff Act of 1930, held that novelty articles such as bonbon or candy dishes not chiefly used in the service of meals, but used on bridge and occasional tables for the service of candy or nuts after a meal, did not fall within the term "tableware" as used in that act. The defendant, however, relies upon the more recent case of United States v. Bruce Duncan Co., Inc., 50 CCPA 43, C.A.D. 817 (1963), where the court held that "snack sets", each consisting of a plate having a well near its rim on one side and a standard tea cup, were properly classifiable as "tableware". The court, in the *Bruce Duncan* case, distinguished the *Butler Bros.* case on the ground that the bonbon dishes in the *Butler Bros.* case were chiefly used after a meal. In the *Bruce Duncan* case the court made the following interesting observations that are also applicable to the case at bar:

"* * * It is a matter of common knowledge which we judicially note that the more formal customs of dining which prevailed on the date of the enactment of the Tariff Act of 1930, have given way to more informal and less rigid practices of modern living. Thus, it is now common practice to eat 'snacks' as well as more complete meals from counters, coffee tables, and snack or 'T.V. tables' as well as the more conventional dining on tables of an earlier day. No longer are our meals identified with a traditional 'table' in a traditional kitchen or dining room. They are as likely to be served in a living room or on a porch and the 'ware' used therewith placed on whatever object is readily available for the purpose." United States v. Bruce Duncan Co., Inc., 50 CCPA at 48–49.

The court in the *Bruce Duncan* case attributed the change in eating habits, at least in part, to the advent of "T.V." and stated:

"* * * While such changes * * can not properly be said to have been contemplated by the drafters of the 1930 Tariff Act, it seems to us the clear intent of the act was that 'tableware', i. e., 'ware' then used in the service of *'meals'* at a table, is properly descriptive of the present uses of 'ware' such as the imported 'snack sets.' Such sets are particularly convenient for carrying a light snack from a point of service, such as the kitchen, to wherever the desired eating place happens to be. We do not agree with the contention of the importer that the trays or plates of the snack sets are so particularly designed as to be suited to be held only in the user's hand or user's lap and would not be used as 'ware' in serving a *'meal'* at a table. The imported snack sets, in usage, could indeed be held by the user, but so can conventional items of 'tableware'. In both instances, however, it is likely that they would more conveniently be placed on a small coffee table, card table, snack counter, snack table or a 'T.V. table'." [Emphasis added.] *Id.* at 49.

Notwithstanding the court's perceptive remarks regarding today's less formal dining practices, it is clear that "tableware" was nevertheless limited to articles used in serving a "meal". Although the "meal" need not be a formal or complete one at a dining room table, but may be a "snack" at a card table, coffee table or the like, it must nonetheless be a "meal". It should be noted that the concept of a fixed time on which food is normally consumed appears in dictionary definitions of the term "meal". Webster's New World Dictionary of the American Language, College Edition, 1964, for example, defines "meal" as "1. any of the times, especially the custom-

ary times, for eating; breakfast, lunch, dinner, etc." See also Maui Varieties, Ltd., et al. v. United States, 58 Cust.Ct. at 284.

In determining the type of articles embraced within item 772.06, the court in the *Maui Varieties, Ltd.* case examined the provisions of the Tariff Act of 1930 dealing with "tableware" and the applicable Tariff Classification Study. It noted that the tariff schedules do not use the term "tableware", and concluded that "the articles covered by item 772.06 are those normally regarded as dinnerware". Maui Varieties, Ltd., et al. v. United States, 58 Cust.Ct. at 284. It is worthy of note that the court added:

> " * * * It is significant that the term 'serving dishes' appears between 'gravy boats' and 'platters.' This is an indication that it was not the intent of Congress to include all articles used to serve food at any time or place within that item, but only those chiefly used for serving food at meals." *Ibid.*

An examination of the importations, and the testimony of plaintiff's witnesses, reveal that the articles are not chiefly used for serving food at meals. Moreover, they are not known or used as tableware. They are clearly distinguishable from the "T.V." snack sets, found in the *Bruce Duncan* case, which consisted of a plate and cup and were used for serving "snacks", in the sense of an informal meal. As noted previously, and as stated by this court in the *Bruce Duncan* case, a meal is a "portion of food taken at a particular time to satisfy the appetite". United States v. Bruce Duncan Co., Inc., 50 CCPA at 48. The articles at bar more clearly resemble the bonbon or candy dishes found in the *Butler Bros.* case, for they are not chiefly used in the service

of meals, but are used to serve food before or after a meal. The witnesses repeatedly made this distinction and testified that the articles were "casual serving" pieces used at times other than meals to hold or serve tidbits, pretzels, nuts, and popcorn around the bar, on patios, in dens and living rooms.

In arriving at its decision, the court has also considered the two previously mentioned characteristics of the articles. First, the articles retain an unpleasant plastic odor which permeates any soft food and second, they cannot be washed in a dishwasher or with hot water without obliterating the design and causing them to twist and warp. Since they are not designed to be used as "serving dishes", they have been referred to as "casual" or "occasional" serving pieces. See United States v. Butler Bros., 33 CCPA at 24, 28.

■■ For the foregoing reasons, the articles at bar are not in the category of "plates, cups, saucers, soup bowls, cereal bowls, sugar bowls, creamers, gravy boats, serving dishes, and platters" and should not be classified in a provision devoted to articles used during the service of a meal. The plaintiff has sustained the burden of overcoming the presumption of correctness which attaches to the classification of the collector of customs. Robaire Import Company v. United States, 60 Cust.Ct. 176, C.D. 3307, 281 F.Supp. 381 (1968).

In view of the court's finding that the articles are properly classifiable under the general item "other", it is not necessary to decide plaintiff's alternate contention applicable only to the two-tiered plastic tray. Plaintiff's protest is therefore sustained and judgment will issue accordingly.