(C.D. 4074)

BRAUNER & CO. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided September 11, 1970)

*Rode & Qualey* (*Ellsworth F .Qualey* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Frederick L. Ikenson*, trial attorney), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case is described on the invoice as steel shores and trench shores and was entered as posts of steel. It was assessed with duty at 10½ per centum ad valorem under paragraph 372 of the Tariff Act of 1930, as modified by Presidential Proclamation No. 3468, 97 Treas. Dec. 157, T.D. 55615, as other machines, not specially provided for. It is claimed to be properly dutiable at 7½ per centum ad valorem under paragraph 312 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as posts, columns, or structural shapes, advanced beyond hammering, rolling, or casting.

The merchandise is substantially the same as that involved in *Rex-Spanall, Inc.* v. *United States*, 60 Cust. Ct. 141, C.D. 3291 (1968), the record of which has been incorporated herein. In that case the court held that the imported shores were not columns, posts, or structural shapes, since they had movable parts and were not of unitary construction and that they were properly dutiable as machines, not specially provided for.

The pertinent provisions of the tariff act, as modified, are as follows:

Paragraph 372, as modified by T.D. 55615:

> Machines finished or unfinished, not specially provided for:

> \*     \*     \*     \*     \*     \*     \*

> Other  (\* \* \*)_____ 10½% ad val.

Paragraph 312, as modified by T.D. 52739:

> Beams, girders, joists, angles, channels, car-truck channels, tees, columns and posts, or parts or sections of columns and posts, and decks and bulb beams, together with all other structural shapes of iron or steel:

> \*     \*     \*     \*     \*     \*     \*

> Machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling, or casting _____ 7½% ad val.

At the trial two witnesses were called by the plaintiff and one by the defendant and a number of exhibits were received in evidence.

Exhibits 1 and 2 are respectively an illustration of and a scale model of the imported article. It consists of two steel tubes, one telescoping within the other, the inner tube having a series of holes into which a pin can be fitted, and the outer one a thread, collar nut and handle by which the height may be adjusted. Attached to the top and bottom of the tubes are flat plates. The inner tube has a diameter of 1.9 inches and the outer tube 2.38 inches. When collapsed, the article is 6 feet 7 inches long. It can be extended to a length of 10 feet 10 inches. When the handle is extended to a horizontal position and the collar nut is turned, the upper tube is raised or lowered.

These articles are used in reinforced concrete construction to support plywood forms into which concrete is poured. Before the concrete is poured the height of the shore is adjusted to that desired by inserting a pin into the holes in the inner tube and then making a fine adjustment by the use of the collar nut. After the concrete is set the article is removed.

All of the witnesses testified that the shore could raise the wooden form before concrete was poured therein. There was also testimony

that thereafter it would be impossible to raise the shore; that the shore was not designed and was not used to raise or lower concrete. One witness said, however, that a minimal amount of concrete in the liquid state could be raised, and another indicated that the concrete might be raised to a small degree.

David Deutsch, president of Adria Construction Equipment Corp., the consignee of the imported merchandise, testified that wooden timbers are used for the same purpose as these shores. They are cut to size and the final adjustment is made by driving in wedges at the bottom of the timber. The advantage of the instant merchandise is that it can be used on different jobs by readjusting, whereas if wooden timbers are too short, the contractor has to order a complete new supply.

Mr. Deutsch agreed with the dictionary definitions of "column" and "post". He considered the instant merchandise, even though adjustable, to be a post and stated that it was known as a post shore in the trade. In his opinion, it is not a jack because it is not used to raise a weight.

A record of tests performed at Columbia University to show the load bearing capacity of the shores at various heights was received in evidence as exhibit 5.

Plaintiff's second witness was Arthur Schmidt, chief engineer of Hico Corporation of America, fabricators and distributors of accessories used in the concrete and construction industry. He stated that in his opinion a shore such as that involved herein is a structural shape because it sustains the load that is put on it. It is not a jack because it does not raise or lower a load. It is a column or post because a column is a cylinder member which supports a load in a vertical position. His opinion was not affected by the fact that the instant merchandise has movable parts because the movable parts are used only to set it to a predetermined height. He said that such articles are referred to in the construction trade as posts, shores, or post shores.

Mr. Schmidt also stated that he had seen tubing used for structural purposes without being welded, such as a bridge overhang support bracket which is used in bridge deck construction to support the portion of concrete that cantilevers from the main steel. In his opinion that item is a structural shape.

As an engineer he stated that a section of unwelded tubing has the same load-bearing capacity as a similar section of welded tubing if the load is axial; that is, imposed on the tube concentric with the center of gravity.

Mr. Schmidt said that when a horizontal force is applied to the collar nut on the instant article, the nut rotates and the inner tube is elevated. This constitutes a change in direction of motion. He defined a machine as a mechanical device for doing work, and said that when

the collar nut on the shore is turned causing the elevation of the inner tube, work is being done.

Defendant called Morris N. Fialkow, civil and structural engineer, employed as chief of the design branch of the New York District of the Army Engineers. He was familiar with merchandise such as the shores before the court and stated that they are not known in his profession or the building trade as structural shapes. He would consider them jacking devices, and as such, machines. In his opinion, the engineering profession would regard them as machines because they consist of several parts put together so as to allow freedom of motion, and can be used for conversion of an applied rotary motion to achieve a linear vertical motion. They have a large mechanical advantage in that the application of small force overcomes large resisting force. He said that the purpose of the movable tube in the inside of the main tube is to permit it to be extended or retracted in order to achieve a certain desired height to support a load. While the adjustments are being made, force and energy are transmitted.

While he admitted that a shore itself does not have to be of unitary construction, he said he had never known of structural shapes with moving parts. He knew of none which were considered by the profession or the building trades at large to be structural shapes.

In the incorporated case (*Rex-Spanall, Inc.* v. *United States, supra*), the court rejected plaintiff's argument that the shores were structural shapes since they were within the stated exemplars, columns or posts, and served the sole function of supporting maximum loads with a minimum use of materials. The court pointed out that in no definition of either column or post was there any suggestion that either term would embrace a movable part. It concluded that the assemblage of movable parts which comprised the shore presented so distinctive an article as to completely differentiate it from either a column or post.

It also held, on the authority of *Laurence Myers Scaffolding Co.* v. *United States*, 57 Cust. Ct. 333, C.D. 2809, 259 F. Supp. 874 (1966), appeal dismissed 56 CCPA 133 (November 3, 1967), that since the imported shore was not of unitary construction, it was not a column, pillar, post or structural unit within the purview of item 652.94, Tariff Schedules of the United States.

In the instant case, plaintiff makes reference to testimony in the incorporated case that unwelded tubing is used in play-ground equipment, in scaffolding equipment, as columns in buses, and as fence posts, and to testimony in the instant case that unwelded tubing has been used for structural purposes such as a bridge overhang support bracket. It then argues that if such unwelded posts are structural shapes, "it logically follows that the imported shores which contain such posts in a welded condition, together with other fittings such as the top and bottom plates, collar, pins, etc., are within the provision

for structural shapes "* * * machined, drilled, punched, assembled, fitted, fabricated for use, or otherwise advanced beyond hammering, rolling or casting * * *."

The difficulty with that position is that the imported shores are not merely columns or posts, as those terms are defined by lexicographers, but are, as stated in the opinion in the incorporated case, an assemblage of movable parts. While two of these parts are tubes, neither one is a column or post. The complete article is used as a shore or support for concrete forms in the same way as a timber or other post might be used but it has the additional feature of being readily adjustable to the exact height desired without the use of wedges. When removed, it may be used on another job where a different height may be needed.

Definitions of the terms "post" and "column" were quoted in our opinion in the *Rex-Spanall* case. We would add the following from Webster's Third New International Dictionary (1968):

> post 1: A piece of timber or other solid substance (as metal) fixed or intended to be fixed firmly in an upright position esp. as a stay or support: PILLAR, PROP: as a: a square timber set on end to support a structural member (as a wall or girder) esp. at a corner of a building: UPRIGHT, COLUMN: * * *

> pillar 1 a: a firm upright support for a superstructure: POST * * *

> column * * * 2: a supporting pillar: as a: a pillar consisting of a shaft, a capital, and usu. a base, the shaft being of circular section except as it is fluted or channeled, b: one of a building's vertical supporting members made of steel, cast iron, reinforced concrete, timber, or stone and often extending from the foundation through several floors, which it supports, to the roof * * *

These definitions do not suggest, any more than did those in the previous case, that a column or post may contain a movable member.

In *Laurence Myers Scaffolding Co.* v. *United States, supra,* which involved provisions of the Tariff Schedules of the United States, the court, after quoting several definitions, stated (p. 340):

> Running through the foregoing definitions is the concept that a column, pillar, or post, when ready for use, is a unitary element providing upright support to a building or structure. The bridge overhang shores, highway shores, and building shores in issue, however, although serving a like purpose, have been shown by the record before us to be composite articles consisting of basic and topping tubular uprights which are fastened together by coupling pins, adjusted to height by means of stopper pins, braced by cross bars, and positioned in fine adustments by means of an incorporated jack.

\* \* \* \* \* \* \*

* * * While it may be said that such equipment assists in the construction of structures in which columns, pillars, and posts are used, the record evidence fails to establish that the equipment in itself is either a column, pillar, or post, or that it is a structure similar thereto.

In the opinion of the court, the shores in controversy are not similar structures to columns, pillars, and posts within the common meaning of those terms but are in fact more than said designated structural units and may well be termed construction equipment.

While the Tariff Act of 1930 evidently contemplates that columns or posts may be in parts or sections, since parts and sections are specifically mentioned, we do not find that the article involved herein is merely a post or column constructed in sections. It is a composite article having movable elements which serve one of its main purposes, the adjustment of the article to the height required to support the plywood form while the concrete is being poured. It is more than a post or column or a structural shape and, as stated in the *Laurence Myers* case, may well be termed construction equipment.

Another reason for holding that these shores are not structural shapes within the purview of paragraph 312, *supra*, is that it has not been established that they possessed the characteristics of structural shapes before processing beyond rolling, hammering, and casting had been completed. *United States* v. *Baron Tube Co. et al.*, 47 CCPA 69, C.A.D. 730 (1960).

Merchandise similar to these shores was involved not only in the *Rex-Spanall* case but in *Acrow, Incorporated, et al.* v. *United States*, 32 Cust. Ct. 356, Abstract 57727 (1953). In both of these cases the articles were held to be classifiable as machines on the ground that they were mechanical contrivances which utilized and applied force for the transmission of motion.

In the instant case Mr. Schmidt testified that a machine is a mechanical device for doing work and that when the merchandise involved herein is being operated to raise the tube to its desired height, work is being done. Dr. Fialkow stated that in this process rotary motion is converted to linear motion and that while the height adjustment is being made, force and energy are being transmitted. It may be, as plaintiff claims, that this article is not used primarily as a jack to raise or lower loads, although it can be used to raise the plywood forms before concrete is poured, but it is nevertheless a machine within the definition quoted in *United States* v. *Idl Mfg. & Sales Corp.*, 48 CCPA 17, 23, C.A.D. 756 (1960):

Any device consisting of two or more resistant, relatively constrained parts, which, by a certain predetermined intermotion,

may serve to transmit and modify force and motion so as to produce some given effect or to do some desired kind of work; * * *.

For the reasons stated, we adhere to the conclusion reached in *Rex-Spanall, Inc.* v. *United States, supra,* that the imported articles are not posts, columns, or structural shapes within the purview of paragraph 312, *supra,* but are dutiable under paragraph 372, *supra,* as classified, as machines not specially provided for.

The protest is overruled and judgment will be entered for the defendant.